before we make any decision and that's pursuant to a Third Circuit rule. Okay we'll hear counsel in EBC and when that let me thank counsel for especially counsel has traveled I know has probably spent part of this week in Philadelphia unexpectedly but I hope we well I don't know whether we had anything for you to do of interest I guess the museums were closed probably not much music I hope you found something to occupy your time preparing of course for the arguments so we'll hear the result of that okay we'll start with EBCI versus AOL morning I'm Richard Allen I represent the appellant EBC one oh it's BBC one we didn't know Roman one but it is the successor to the company that was formerly known as eToys okay mr. Allen the last person who argued before us yesterday was my size I think you're going to have to pick up and do something with the microphone I'll be happy to your okay so we can and we want to be sure that we get you on the disc and Mike you'll let me know if there's any problem because it's really important today that we get everybody on there your honor if I may I'd like to reserve two minutes for rebuttal that's this is a case that arises out of a somewhat unusual fact situation that being that while the contract between eToys and AOL started out as sort of a pay-as-you-go contract it was restructured with the effect that eToys ended up paying about six million dollars in advance for services to be it paid a total of seven and a half we do read the record at a total of eight and a quarter but when it was when the contract was restructured in November of 2000 essentially there was six million dollars in advance for services to be delivered over the next two years and they paid another seven hundred and fifty thousand they did the total paid was eight million two hundred and fifty thousand dollars whatever the precise amounts and there was to be fair some dispute is that what the value was that had been delivered in the first year it is clear that as of November 2000 eToys had paid a lot of money we think about six million dollars in advance for services to be delivered and then two months later eToys became insolvent AOL as it had the right to do terminated the contract but it kept the money and that's why we're here but there was also a provision in the agreement that the advance payment was non-refundable right there was your honor and and as Judge Walrath found that in the context of section 548 those provisions are not controlling deciding actually this court's decision in RML now the court found that the effect of the transfer of the termination was to essentially transfer back to AOL this advertising space that had been sold to eToys and the court made a number of findings that unquestionably show that as a result of this termination AOL got substantial value the court found did the court find how much value that was what we understood the issue to be when we got to the trial but the court did not because of the analysis the court ultimately the analytical approach the court ultimately took the court specifically found not just in summary judgment but in its final opinion that AOL had this limited amount of to free up the space which it could then sell to others at even higher prices AOL's witnesses said the space probably was resold but the way AOL system worked you couldn't trace specific advertising space so no one could say definitively and there was undisputed evidence that this advertising space that went back to AOL clearly had value we think that the most When you say clearly had value you mean to AOL? To AOL. Didn't clearly have value to eToys? That's that's correct your honor and I'll come to that in just one minute well that's the crux of it isn't that the crux of the case it is exactly your honor because it's undisputed that AOL derived value from this termination and AOL doesn't argue otherwise on the other hand the court made specific findings as to eToys it found that the contract as of the date of termination did not have value the services didn't have value because eToys was going out of business it didn't need advertising services and it also found that had the contract not been terminated the estate would have gotten little or nothing now in fairness I think that's a little bit of a prediction as opposed to a finding but but that's clearly was the court's conclusion. Are you saying then that the creditors didn't lose anything? That's that's what the court found your honor we don't dispute that as of the date of the termination AOL I'm sorry eToys did not need these advertising services for which it had paid no question about that the issue that's really presented here and it's apparently basic issue under 548 is how do you apply the totality of circumstances test in this funny situation both both sides agree that the totality of circumstances test is the equivalent value and here it's undisputed the debtor got nothing as of the termination the court concluded well it wouldn't have gotten it couldn't use the services anyway was essentially the court's opinion and the issue really is whether the unquestionable value AOL got from this transaction is something that the court had to consider under the totality of circumstances test but you said before that it's not measurable as I understood what you said and therefore what could it get oh no no your honor what what AOL received I think is is clearly shown by the record to have value and by the court's findings well how would one measure what if you don't know whether AOL sold it I mean you could look at the rate sheet but the rate sheet has been discounted and how I mean suppose you're absolutely right hypothetically how could anybody ascertain what the value is of the return of advertising time and space that we don't even know whether it was sold or not the space unquestionably had value that value is shown by the price list of AOL as of that date that's what it was charging it's also shown by the arm's-length deal negotiated two months earlier the court found specifically that not only could AOL resell that space it might resell it at a higher higher price to somebody else now this problem of did they really sell it let me back up a minute assume for a that doesn't mean they got no value if they got the return of this space they got the use of it they got the ability to sell it it clearly had some value and the court's finding was well for the court to have given us nothing as we got nothing it had to find AOL had received zero value and nothing in the record supports that and conversely where it's the problem is AOL's records don't allow us to trace this and it's but its witnesses said well we probably did resell it clearly that the only fair reading of that record is AOL derived value from this transaction. Do you know of any precedent in a fraudulent transfer situation and this wasn't fraudulent but that's the language that's generally used in which the examination by the bankruptcy court is made of the value to the entity that received it when it's not a concrete something. The answer the answer short answer is no there are lots of cases we couldn't find it. Well as I said this is an unusual fact situation and and the parties both of whom I think spent a lot of time looking at it could not find anything quite like it now there are lots of cases that say if in fact property is trans the transferee resells it that's the clearest kind of evidence of value but in this case the I mean what the record clearly showed was nobody could tell but AOL's own witnesses acknowledged they probably resold it and you know AOL wasn't giving away its advertising space at that time so if it got this space for which we say as of that time eToys had paid four and a half million the only reasonable conclusion is it got some value maybe it didn't sell all the space but it got some value but the court never focused on that and and that is what we say is the fundamental problem with the court's analysis. Why do you say why do you say the court never focused on that the court made a finding that it had no value to eToys at the time of termination of the agreement right? That's correct but the court never focused on the other side of the the transaction your honor the value that AOL got that's what makes this a funny situation. No no no okay but that see that I think raises the question of law and I don't think you answered just as far as the question is does the case law or the bankruptcy code or Virginia law tell you how this is to be valued specifically? Is there any case that says no this has to be valued from the viewpoint of AOL? I don't think so right? Well your honor I think the closest case is this court's decision in Mellon Bank versus Metro which goes to the sort of the fundamental approach in a 548 case. You are comparing what this court said there you're comparing what the debtor got with and I'm quoting the realizable commercial value of the assets transfer. That's the comparison that's required under 548 and we know eToys got zero so if these advertising services had any realizable commercial value then it was a constructively fraudulent transfer and eToys was entitled to recover that value and that's just the fundamentally that's how section 548 works. Wasn't it your burden to put on some evidence as to what the value was? It was your honor. And did you put a dollar value? We did. Well you looked at the rate sheets and the rate sheets are when somebody buys the time but for all we know there's no concrete value that anybody bought the time. People said they probably did but is that enough upon which to have a verdict? Well your honor where the court had found all of the other elements of a constructively fraudulent transfer and where the problem is with AOL's system where we did all we could your honor we asked them they said our system doesn't allow us to tell you so then we asked their witnesses and they said well our system doesn't allow us to tell you but we probably resold them. Yeah but you can't have a judgment based on probably can you? Well I think your honor if you get to the point where you are looking solely at what I think this burden is to put in the best evidence it can to provide a reasonable basis for a finding of damages and we did the best we could with what the record allows us. Suppose they didn't sell it would you then agree that there were no damages? I would not your honor because the opportunity to resell it where the court specifically found this went back to AOL and AOL gave AOL the possibility of selling it for a higher price that alone has value if they didn't achieve the value that's a different story but it had value. Okay I think we do you have any questions? I think we understand your position. Thank you. We'll hear from the council for the AOL. Thank you your honor. May it please the court Danielle Spinelli for AOL. Section 548 of the bankruptcy code provides a remedy for a debtor's actual or constructive fraud on its creditors. It doesn't provide a way for a debtor to undo a deal that it made at arm's length when it was solvent that it now regrets in hindsight but that's what eToys is trying to do here and there are three reasons why the lower courts correctly rejected that argument. We've briefed them all so I'll just list them quickly. First as and as Judge Tashima pointed out I think this is the crux of the case as counsel for eToys just conceded the agreement with AOL had no value to eToys estate on the date it was terminated and therefore eToys creditors lost nothing. That should be the beginning and end of the analysis for fraudulent transfer purposes. But second. Well is this a is this a problem as Mr. Allen argued that a problem of valuation in other words first of all the bankruptcy court did find that there was a fraudulent transfer right? The bankruptcy court found in its summary judgment ruling that a transfer of an interest of eToys and property had occurred. We disagree with that but assuming that to be correct the bankruptcy court then went on to find after trial and after hearing the evidence. So after that after that finding so the question was well how do we value that? Wasn't that the basic question that. That's correct. That was the question that was teed up for trial. The bankruptcy court found that a transfer had occurred. So Mr. Allen says well you know we put forward all the evidence that was available and there's just nothing else available that could be adduced. What else could we do? What's your answer to that? Well two answers Judge Tashima. First of all what's relevant for fraudulent transfer purposes and I think this court's decisions make that very clear is what did the creditors lose. The purpose of a fraudulent transfer remedy is to put the estate back in the position it would have been in had the transfer not occurred. Had the transfer not occurred in this case Judge Walrath found after hearing the evidence that the estate would have been no better off at all because it couldn't have realized any value from those contractual rights. Well let me say when the transfer had not occurred is that the same as saying if AOL had not terminated the agreement? Correct. Okay so. Because that's the alleged transfer here. So let me follow that through. So if AOL had not terminated that agreement then eToys would still have the right to advertise on AOL right? Is that what it amounts to? If the agreement had not been terminated and if eToys had retained the right to receive advertising services from AOL that right would have been of no value to eToys because it was no longer operational. And it would have been of no. But you know why couldn't it you know like sublease that right to somebody or something like that? You know tell Toys R Us look we have all this time on AOL you know we'll let you use it for you know X dollars a minute or something like that. Isn't that value? That was one of the issues that the bankruptcy court considered and the bankruptcy court found as a matter of fact that AOL wouldn't have entered into this agreement with any non-assignable and eToys hasn't challenged that conclusion. You mean AOL had the right to refuse that? I'll call it an assignment. Refused. Correct. That's what the bankruptcy court found and eToys hasn't disputed that. I thought the contract said it wasn't assignable. The contract says that it's not assignable without AOL's consent. But all those kinds of rights have to be reasonably exercised don't they? That's correct. And what the bankruptcy court found is that it would have been reasonable for AOL to refuse consent in this instance where the identity of the counterparty was material to the contract. And as I noted eToys hasn't challenged that conclusion in this court. So any argument to that effect has been waived. So in other words you're saying that's a finding that we have to accept because it hasn't been challenged right? I believe so Your Honor. It was not assignable. That's correct. That's correct. And counsel for eToys has conceded that eToys is not disputing the conclusion that these contractual rights had no value to the estate. Rather what eToys is arguing is that when the agreement was terminated AOL gained something and therefore it doesn't matter that the creditors didn't lose anything. The court should have looked at what AOL gained. But that's just not the fraudulent transfer analysis. Well they lost the opportunity to have it resolved by AOL. They did lose something. Well as Mr. Allen just said eToys is not disputing that they didn't lose anything because Well they lost the opportunity. I mean if as I understand what he's arguing if AOL they're saying AOL could have gone out and advertised the advertising time and space and witnesses said they probably did and AOL didn't do that and the bankruptcy court didn't look to what that value was because the bankruptcy court looked only to the value to eToys and not to what AOL gained. As I understand the argument. That's how I understand it as well Your Honor. And what's wrong with the argument. It's hard to analogize this case. Suppose it had been something concrete like an artwork that they were preparing for example that eToys couldn't use. It's a bad analogy but I can't think of an analogy. Wouldn't AOL have gotten something from the fact that eToys no longer could use it. Well a couple of answers to that. I mean first of all I think what makes this case a little bit unusual and a little bit difficult to conceptualize is that normally the value that the transferee can receive from reselling the property interest is very relevant to this determination because normally what we're talking about is an asset that's really transferable. Here that's not what we're talking about. This asset as the bankruptcy court found couldn't have been sold by eToys estate. eToys estate couldn't have realized any value for it. Suppose eToys had done what the rest of us do is pay as it went along. Instead of paying seven and a half million dollars early in the game in advance it paid for the advertising space as it got the advertising. What do you call these things? The impressions. Well whatever they are. Then the creditors would have more in the bank because eToys would not have been minus seven and a half million or whatever it was as of the time. I understand your honor. Doesn't it seem unfair that the creditors don't get the benefit of that? Well this is the thing. And by the way fraudulent although they use that word it doesn't have to be fraudulent. Oh no and we're of course not just talking about an actually fraudulent transfer here. Okay let's get that on the record. Bankruptcy law doesn't reach back to undo transactions that the debtor made when it was solvent at arm's length even if in hindsight they turned out to be a bad deal. Bankruptcy law only undoes transactions that occurred while the debtor was insolvent because at that point any risk that the debtor is taking by making a bad deal falls on the creditors. Before that the risk falls appropriately on the debtor's shareholders. And that's why section 548 draws the line at insolvency. So if eToys had entered into this agreement in the first place when it was insolvent this might be a different case. But it's undisputed that when eToys entered into the agreement in 1999 it was completely solvent. It had just come off an extremely successful IPO. It negotiated this agreement at arm's length according to prevailing market terms. It agreed that it would have the right to receive advertising services only so long as it remained solvent and operational. And it agreed that any payments it made would be non-refundable. And the fact that this now has turned out to be perhaps not as good a deal as eToys anticipated at the time doesn't render it a fraudulent transfer. Ms. Pinelli, let me ask this. Can you cite any case that supports your position as to how, I'll call it, this asset should be valued under the, you know... Yes. I'll call it the fraudulent transfer provision in this kind of circumstance. Yes. What's your best case? Well, I mean, there are several. But, I mean, this Court's own decision in Mellon Bank, which counsel for eToys referred to, says that the issue is whether the debtor received realizable commercial value that's the same as the realizable commercial value it gave up. And it goes on to say that if the realizable value of the debtor's estate is the same after the transaction as it is before the transaction, then no fraudulent transfer has occurred. That's the case here. After the agreement was terminated, eToys' estate was no worse off than it was before the agreement was terminated because the agreement had no value to eToys' estate. And what's perverse about the remedy that eToys is seeking here is that eToys is seeking to have its estate put in a better position than it would have been in had the transfer not occurred. Had the transfer not occurred, eToys' estate would have nothing of value. But since the agreement was terminated, eToys is claiming that it's now entitled to several million dollars in value that it otherwise wouldn't have had. That's the opposite of the result that fraudulent transfer law contemplates. Your position depends on the finding, which I think the bankruptcy court made, that this agreement had no value to eToys at the time of bankruptcy. We believe that's correct and we believe that's sufficient to resolve this case, but there are two other separate independent reasons why this court could affirm if it didn't agree with that. First, eToys did not meet its burden to show what AOL might have gained from the termination, even if the gain to AOL were relevant, which we submit that it's not. That's a finding that the bankruptcy court made. That's reviewed for clear error. eToys can't possibly show that that finding was clearly erroneous. And finally... Well, you know, I don't know about in this context, but there's law and I'll call it ordinary damages concept that goes something like this, that once a plaintiff proves liability and a right to some damages doesn't have to establish damages with any degree of preciseness. I mean, you know, a ballpark estimate is good enough. You know, the case is like that. Why doesn't that apply here? I don't believe eToys put on enough evidence even to permit a ballpark estimate. eToys put in the rate cards. We, AOL, had an expert witness that testified about the way that conditions in the market for Internet advertising had changed since the time in November 2000 when eToys entered into the amended agreement, which was based in part on the rate cards. Things had changed dramatically. The rate at which Internet browsers, people browsing the Internet, clicked through on those advertisements had dropped very dramatically. The industry was in grave doubt about how valuable this advertising was at all. eToys didn't put on, and we also put on evidence from AOL witnesses who said that the rate cards were just a starting point for negotiations. And eToys put on no evidence to counter that that would give the bankruptcy court an ability to figure out a ballpark estimate of what that space might have been worth to AOL, even were that relevant, which I don't believe it is. I mean, essentially, eToys is really trying to fit a square peg into a round hole here. Its complaint is that it made a bad bargain. That's what we always try to do. That's correct, but I don't think it works here, because fraudulent transfer law simply doesn't permit a debtor to go back and undo a bad bargain it made while it was solvent. Thank you. Thank you. Mr. Allen, rebuttal. Mike, two minutes. Mike. Thank you, Your Honor. I think I can be brief. I only have two points to make, but I'm obviously happy to answer any more questions. This whole issue of value and what the court should and should not have done, I think highlights a very, very basic inconsistency in the court's opinion, which is this. The court didn't find that the contract was transferred. The contract was terminated. What the court found was transferred were the advertising services. And on summary judgment, it essentially said that's what it was going to value, but it never went back and tried to value those advertising services. It just started from the notion of what was the contract value and what would it have been to the estate. If the totality of circumstances test means anything, it means the court has to look at the actual circumstances. And the termination was significantly different legally and factually from an assignment of the contract. Termination ended the contract. Termination freed AOL of any responsibility to deliver services, and the termination had the practical effect of returning that space to AOL to sell. Now, on the question of the value of those services, I just want to respond briefly to what Ms. Spinelli said. And we point this out in our reply brief. The court's findings about eToys selling at a discount from list prices to large purchasers related to back in 1999. It was undisputed, AOL concedes it in its brief, that when the parties renegotiated this deal two months before the termination, they did it on the basis of the existing prices on the cards. So that was a situation where two sophisticated people at arm's length were paying those prices, and those prices continued. Those were the list prices, and we put this in the record. What are your list prices as of the termination date? They were the very same rate cards as two months earlier. Now, even if AOL was under some circumstances selling at a discount, it wasn't giving those services away. And those services clearly had value. I'm out of time. Thank you. Thank you. We'll take the matter under advisement. We will have the disk shipped to Judge Roth. We will have conference, and we will come up with an opinion. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you. Thank you. Thank you. We'll hear counsel in the matter, in re-application.